James E. Hough (JH-1066)
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, NY 10104-0050
(212) 468-8000

Robert H. Kreutzer (RK-1532)
7955 E. Chaparral Rd. Unit 110
Scottsdale, AZ 85250-7233
(480) 367-9073

Craig I. Celniker (CC-2352)
Shogo Asaji (SA-8547)
MORRISON & FOERSTER LLP
Shin-Maru Building 29th Fl.
1-5-1 Marunouchi, Chiyoda-ku
Tokyo, Japan 100-6529
(011-81-3) 3214-6522

Attorneys for Defendant
IHI Corporation

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **AVIATION CAPITAL GROUP CORP.** | Civ. No. 1:09-1077 (NRB) |
| *Plaintiff*, | **ANSWER AND COUNTERCLAIMS** |
| vs. | |
| **IHI CORPORATION,** | |
| *Defendant*. | |

Defendant IHI Corporation ("Defendant" or "IHI"), by and through its

undersigned counsel, hereby answers the Complaint of Plaintiff Aviation Capital Group Corp.

("Plaintiff" or "ACG") dated February 6, 2009, and further asserts the following affirmative

defenses and counterclaims.

1

**ANSWER TO COMPLAINT**

**Introduction**

1.      Answering Paragraph 1 of the Complaint, Defendant denies the allegations of that paragraph, except admits that IHI is engaged, *inter alia*, in the business of repairing and overhauling jet aircraft engines, that ACG delivered to IHI a jet aircraft engine for repair, and that ACG's action purports to be one for a declaratory judgment seeking a judgment that ACG does not owe a certain sum to IHI.

**The Parties**

2.      Answering Paragraph 2 of the Complaint, Defendant lacks sufficient information and belief to admit or deny the allegations in Paragraph 2, and on that basis, denies the allegations of that paragraph.

3.      Answering Paragraph 3 of the Complaint, Defendant admits the allegations of that paragraph.

**Jurisdiction and Venue**

4.      Answering Paragraph 4 of the Complaint, Defendant admits the allegations of that paragraph.

5.      Answering Paragraph 5 of the Complaint, Defendant denies the allegations of that paragraph, except admits that the settlement agreement that ACG alludes to in that paragraph (the "Settlement Agreement") is attached to the Complaint as Exhibit A, and respectfully refers the Court to the Settlement Agreement for its terms and conditions.

6.      Answering Paragraph 6 of the Complaint, Defendant denies the allegations of that paragraph.

**Facts**

7.      Answering Paragraph 7 of the Complaint, Defendant denies the allegations of that paragraph, except admits that the Settlement Agreement arose from a dispute over an invoice issued by IHI to ACG in connection with another jet engine repaired by IHI for ACG, and that Exhibit A attached to the Complaint is a copy of the Settlement Agreement, and respectfully refers the Court to the Settlement Agreement for its terms and conditions.

8.      Answering Paragraph 8 of the Complaint, Defendant lacks sufficient information and belief to admit or deny the allegations in the first two sentences of Paragraph 8, and on that basis, denies those allegations, except admits that on or about May 15, 2008, LTE International Airways ("LTE") delivered the engine identified in the Complaint as the "154 Engine" to IHI for repair and refurbishment.  Defendant also admits that IHI completed the work required to be performed on the 154 Engine on or about July 18, 2008, and that IHI sent an invoice to ACG for the amount of US$ 3,088,255 which ACG paid in partial satisfaction of the debts owing to IHI under the Settlement Agreement, and denies the remainder of the allegations of that paragraph.

9.      Answering Paragraph 9 of the Complaint, Defendant denies the allegations of that paragraph, except admits that ACG requested IHI to hold the repaired 154 Engine pending further direction from ACG.

10.     Answering Paragraph 10 of the Complaint, Defendant denies the allegations of that paragraph, except admits that during the approximate period that the 154 Engine was at IHI's repair facilities, IHI leased a spare jet engine to LTE with ACG's knowledge and consent.

11.     Answering Paragraph 11 of the Complaint, Defendant denies the allegations of that Paragraph, except admits that LTE failed to make certain lease payments to IHI, that on information and belief LTE is now insolvent, and that IHI is owed at least US$ 992,285 by LTE.

12.     Answering Paragraph 12 of the Complaint, Defendant denies the allegations of

that paragraph, except admits that IHI claims that ACG has breached the Settlement Agreement

and that ACG is liable for damages relating to such breach.

13.     Answering Paragraph 13 of the Complaint, Defendant denies the allegations of

that paragraph, except admits that IHI requested ACG by a letter dated January 7, 2009 to pay

US$ 992,285 excluding any interest, and that the letter is annexed to the Complaint as Exhibit B.

14.     Answering Paragraph 14 of the Complaint, Defendant admits the allegations of

that paragraph, and affirmatively alleges that ACG has not paid the described sum.

15.     Answering Paragraph 15 of the Complaint, Defendant denies the allegations of

that paragraph, except admits that IHI requested ACG in the January 7 letter to pay US$ 150,000

as liquidated damages pursuant to Clause 2 of the Settlement Agreement, and that ACG does not

dispute that said sum is owing to IHI.

16.     Answering Paragraph 16 of the Complaint, Defendant denies the allegations of

that paragraph, except admits that ACG has filed an arbitration proceeding in New York against

IHI for the return of the 154 Engine and other related relief.

### RESPONSE TO PLAINTIFF'S FIRST CLAIM

17.     Answering Paragraph 17 of the Complaint, Defendant refers to and incorporates

herein its responses to Paragraphs 1-16 of the Complaint.

18.     Answering Paragraph 18 of the Complaint, Defendant refers to and incorporates

herein its responses to Paragraphs 11-12 of the Complaint.

19.     Answering Paragraph 19 of the Complaint, Defendant admits that ACG denies

that it owes IHI the sum of US$ 992,285 under the Settlement Agreement or otherwise.

20.    Answering Paragraph 20 of the Complaint, Defendant denies the allegations of that paragraph.

21.    Answering Paragraph 21 of the Complaint, Defendant admits that ACG requests the Court to declare that ACG has no liability to IHI for the sum of US$ 992,285 requested by IHI or for any other sums IHI may allege to be owed under its engine leases with LTE, but denies that ACG is entitled to such a declaration and denies the remaining allegations of that paragraph.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

22.    The Complaint fails to state a claim upon which relief can be granted.

### Second Affirmative Defense

23.    The Court lacks personal jurisdiction over Defendant.

### Third Affirmative Defense

24.    The process is insufficient.

### Fourth Affirmative Defense

25.    There was insufficient service of process.

### Fifth Affirmative Defense

26.    The Complaint fails to state an actual controversy.

### Sixth Affirmative Defense

27.    Plaintiff would be unjustly enriched if it were permitted to obtain any relief in this action.

**Seventh Affirmative Defense**

28.    The claims asserted in the Complaint are barred in whole or in part by the doctrines of estoppel or unclean hands.

**COUNTERCLAIMS**

29.    As and for its Counterclaims in the above-referenced action, Counterclaim-Plaintiff IHI hereby pleads as follows.

30.    Defendant and Counterclaim-Plaintiff IHI is a corporation organized under the laws of Japan with its principal place of business at Toyosu IHI Building, 1-1, Toyosu 3-chome, Koto-ku, Tokyo 135-8710, Japan.

31.    According to the Complaint, Plaintiff and Counterclaim-Defendant ACG is a Delaware corporation with its principal place of business in California.

**Jurisdiction and Venue**

32.    This Court has jurisdiction over these Counterclaims pursuant to 28 U.S.C. § 1332.  Counterclaim-Plaintiff is a citizen of Japan, and Counterclaim-Defendant is a citizen of a State.  The amount in controversy exceeds US$ 75,000 exclusive of interest and costs.

33.    This Court has personal jurisdiction over Counterclaim-Defendant by virtue of its bringing this action and by virtue of the choice-of-forum provision in the Settlement Agreement, which provides that the parties "submit to the non-exclusive jurisdiction of the courts of New York to resolve any dispute arising hereunder."

34.    Venue properly lies in this judicial district by virtue of Counterclaim-Defendant having filed its Complaint therein.

**Facts Common to Counterclaim Counts I-IV**

35.    In 2004, ACG and IHI executed the General Terms of Agreement between ACG and IHI No. ACG/IHI/V2500/01 ("the GTA", a copy of which is attached hereto as Exhibit 1), in connection with the repair and overhaul of an IAE V2500-A5 airplane engine bearing manufacturer's serial number V10035 for ACG.

36.    IHI overhauled, repaired and otherwise serviced the V10035 engine in full compliance with the GTA in Japan, and on May 20, 2004, IHI duly issued Invoice V10035ACG488-01, in the amount of US$ 483,617 that factored in US$ 800,000 that ACG had pre-paid, in connection with its work.  On November 17, 2004, IHI issued a revised invoice, Invoice V10035ACG488-R1, in the amount of US$ 445,467.

37.    ACG disputed the amount it owed to IHI based on an unfounded warranty claim allegedly stemming from previous maintenance work IHI had performed on the V10035 engine. IHI denied ACG's claim and demanded full payment.

38.    That notwithstanding, on June 16, 2005, IHI and ACG entered into the Settlement Agreement (annexed to the Complaint as Exhibit A).

39.    Without conceding any fault, IHI agreed in the Settlement Agreement to reduce the balance payable on the outstanding invoice for the work performed on the V10035 engine by US$ 500,000.  In return, ACG agreed in Clause 2 of the Settlement Agreement to induct (i.e., place with IHI) three additional IAE V2500-A5 engines to IHI for "full performance restoration and engine LLP [life-limited part] replacement" (that is, overhaul) within three years from the date of the agreement.  ACG further agreed that it would pay liquidated damages in the event it failed to induct one or more of the three engines, in the amount of US$ 225,000 for the first one, US$ 150,000 for the second one, and US$ 150,000 for the third one.

40.     In addition, ACG also agreed in Clause 3 of the Settlement Agreement to lease

three engines as follows:

> During each of the three (3) engine shop visits committed pursuant to Clause 2
> above, provided IHI has a leased engine available at the time each engine is
> inducted into IHI's facilities, IHI shall lease to ACG, and ACG shall agree to
> lease from IHI, such leased engines at competitive market rates and terms as then
> available in the leased engine industry. (Underline added.)

41.     The Settlement Agreement thus makes clear that ACG was obligated to provide

IHI with revenue in the form of both engine overhaul fees and leasing fees, in return for a

discount on the invoice that derived from the GTA.

42.     According to Paragraph 8 of ACG's Complaint, after ACG and IHI entered into

the Settlement Agreement, ACG leased an Airbus A320-200 having a serial number MSN0580

to LTE International Airways from approximately May 16, 2006 through November 17, 2008.

This aircraft was equipped with two IAE V2527-A5 engines with manufacturer's serial numbers

V10155 and V10154 respectively, the latter being the "154 Engine."

43.     Sometime in 2007, on information and belief, ACG instructed LTE that the

maintenance of the V10155 and V10154 engines should be performed by IHI.  As a result, LTE

contacted IHI for the first time in or around March of 2007, and the two negotiated as late as

from November to December of 2007 regarding the repair and maintenance of the V10155 and

V10154 engines.  During this time, communications between ACG and IHI and, on information

and belief, between ACG and LTE continued.

44.     On or around December 13, 2007, ACG forwarded a Purchase Order A00580-001

to IHI in connection with the repair and maintenance of the V10155 and V10154 engines.

Attached as Exhibit 2 is a copy of ACG's purchase order.  The V10155 and V10154 engines

were the only engines to be inducted by ACG to IHI pursuant to the Settlement Agreement.

45.    On or around February 1, 2008, the V10155 engine was delivered to IHI in Japan from LTE in Cairo, Egypt for repair and maintenance.  A few days later, another IAE V2527-A5 engine having serial number V10080 was delivered to IHI in Japan from LTE in Cairo.

46.    The V10080 engine had been detached from an Airbus A320-200 having serial number MSN0496 that LTE was leasing from a company called International Lease Finance Corporation ("ILFC").  LTE also requested IHI to repair and overhaul the V10080 engine as well.

47.    IHI repaired and overhauled the V10155 engine and the V10080 engine, and on or around April 11, 2008, IHI had them shipped to LTE in Cairo.

48.    On or around May 15, 2008, LTE delivered the V10154 engine to IHI in Japan from Cairo for repair and maintenance.

49.    ACG never discharged its obligation to lease engines from IHI in connection with the induction of the V10155 and V10154 engines per the terms of the Settlement Agreement. This resulted in lost revenue for IHI.

50.    Knowing that LTE needed a replacement engine for the V10154 engine and in order to mitigate any further damages caused by ACG's failure to discharge its obligation, IHI on or around April 7, 2008 agreed to lease a replacement engine to LTE commencing April 30, 2008.  In order to make this possible, IHI in turn leased an IAE V2500-A5 engine having the serial number V12580 from a Swiss company called International Aero Engines AG ("IAE") in the U.K.

51.    LTE, upon receiving the V10155 (ACG's) and V10080 (ILFC's) engines, placed both onto ACG's MSN0580 airplane, even though the V10080 engine originally came from ILFC's MSN0496 airplane.  On information and belief, this enabled LTE to fly ACG's airplane

sooner and thereby generate revenue for itself without waiting for a replacement engine for the V10154 engine.

52.    The delivery of the V12580 replacement engine to LTE was delayed a short while because ACG was late in paying the deposit for the repair and maintenance of the V10154 engine.  LTE eventually placed the V12580 replacement engine on ILFC's MSN0496 airplane.

53.    On information and belief, ACG was well aware that LTE was flying ACG's MSN0580 airplane using the V10080 engine in place of the V10154 engine and/or the V12580 replacement engine that IHI subleased to LTE.

54.    On and after June 16, 2008, upon the expiration of three years from the date of the Settlement Agreement, ACG was in breach of the Settlement Agreement for having failed to induct a third engine to IHI as required by Clause 2 of the agreement.  In accordance with that clause's liquidated damages provision, ACG immediately became obligated to pay IHI US$ 150,000 for its failure.

55.    ACG, however, has yet to make this payment even though more than eight months have passed since its breach and ACG has never disputed its obligation.

56.    The repair and overhaul of the V10154 engine was scheduled to be completed in mid-July of 2008.  However, on or around June 28, 2008, ACG contacted IHI and requested IHI not to release the V10154 engine once it is repaired to LTE without ACG's express approval.  On or around July 16, 2008, ACG again asked IHI to hold the V10154 engine in Japan and not to return it to LTE, which IHI agreed to do.

57.    On or around July 18, 2008, IHI completed the repair and overhaul of the V10154 engine.  On information and belief, by that time and even earlier, ACG had become aware that LTE was in financial trouble, and ACG had become increasingly concerned that LTE might

default on its lease and other payments to ACG in connection with ACG's MSN0580 airplane.

LTE owed payments to IHI, and on information and belief, to various other entities as well,

including ILFC.  On information and belief, ACG was well aware of IHI's lease of a replacement

engine for the V10154 engine to LTE.

      58.     On information and belief, ACG asked IHI to hold the V10154 engine in order to

withhold it from LTE and thereby pressure LTE into prioritizing its accounts payable to ACG

over those of other entities such as IHI.  On information and belief, this tactic paid off for ACG,

which was able to collect outstanding payments from LTE and managed to terminate its airplane

lease before LTE became insolvent at or near the end of 2008.  By contrast, IHI was left holding

the bag for at least US$ 992,285 and more that is owed by LTE in connection with the sublease

of the V12580 engine.

      59.     On information and belief, due to its financial troubles, LTE suspended all of its

flights permanently on November 15, 2008.

      60.     On or around November 26, 2008, ACG for the first time asked IHI to return the

V10154 engine.

      61.     ACG alleges in Paragraph 16 of its Complaint that IHI refused to return the

engine to ACG.  However, according to Articles 6.2 and 6.3 of the GTA, ACG is obligated to

provide a transportation stand that IHI is contractually required to use to pack each engine that is

to be returned.  Yet until very recently ACG had refused to provide the transportation stand

necessary for the return of the V10154 engine.

      62.     Only on March 4, 2009, after ACG filed its Complaint on February 6, 2009, did

ACG finally provide the required transportation stand to IHI through its forwarder.  However,

the transportation stand ACG provided was unusable because of a problem with the stand's

connecting parts.  IHI notified ACG's forwarder of this problem, but the problem has yet to be

rectified.

63.     ACG has also refused to pay the storage fees owed for storing the V10154 engine

pursuant to ACG's own request to IHI to hold the engine after July 18, 2008.  Reasonable

storage fees based on competitive market rates are, by ACG's own admission not less than US$

250 per day.  Thus the total amount of storage fees owed by ACG is at least US$ 61,250.

Furthermore, ACG has not paid the packing fees for storing the V10154 engine.

64.     On information and belief, in November of 2008, ACG's MSN0580 airplane and

ILFC's MSN0496 airplane were flown to Düsseldorf, Germany, where the V10080 engine was

removed from ACG's airplane and placed back onto ILFC's airplane.  The V12580 replacement

engine was returned to IAE on December 24, 2008.

### Counterclaim Count I: Breach of Contract
### (Failure to Induct)

65.     Counterclaim-Plaintiff incorporates Paragraphs 29-64 above as if fully set forth

herein.

66.     IHI and ACG lawfully entered into the June 16, 2005 Settlement Agreement

whose copy is annexed to the Complaint as Exhibit A.

67.     Under Clauses 2 and 3 of the Settlement Agreement, ACG was obligated to

provide IHI with revenue in the form of both engine overhaul fees and leasing fees, in return for

a discount on the invoice for the repair and overhaul of the V10035 engine that derived from the

GTA.

68.     ACG breached Clause 2 of the Settlement Agreement by failing to deliver and

induct, within three years of entering into the agreement, a third engine to IHI for overhaul as

required by the agreement.  Pursuant to the agreement's liquidated damages provision, ACG owes IHI US$ 150,000, plus interest, for its breach.

## Counterclaim Count II: Breach of Contract
### (Failure to Lease)

69.     Counterclaim-Plaintiff incorporates Paragraphs 29-68 above as if fully set forth herein.

70.     ACG breached Clause 3 of the Settlement Agreement by failing to lease engines from IHI in connection with the induction of the V10155 and V10154 engines as required by the agreement.

71.     IHI, in order to mitigate any further damages caused by ACG's breach, leased the V12580 engine from IAE and subleased it to LTE to replace the V10154 engine.

72.     ACG's breach has resulted in damages of at least US$ 992,285 to IHI, as reflected in the sublease rentals for the replacement engine for the V10154 engine, and further sums for a replacement of the V10155 engine, and interest thereon.

73.     ACG has not remedied or compensated IHI for any of the damages caused by this breach.

## Counterclaim Count III: Breach of Implied Covenant of Good Faith and Fair Dealing

74.     Counterclaim-Plaintiff incorporates Paragraphs 29-73 above as if fully set forth herein.

75.     The Settlement Agreement includes an implied covenant of good faith and fair dealing that precludes each party from engaging in conduct that will deprive the other party of the benefits of the agreement.

76.    ACG had a duty under the Settlement Agreement to act in good faith and engage in fair dealing.

77.    ACG violated its duty and covenant to act in good faith and engage in fair dealing by deliberately failing to lease engines from IHI in connection with the induction of ACG's engines to IHI for repair and overhaul, as expressly required by the Settlement Agreement.

78.    On information and belief, ACG further violated its duty and covenant to act in good faith and engage in fair dealing by asking IHI in June of 2008 and thereafter to withhold the repaired V10154 engine from LTE in order to pressure LTE into prioritizing its accounts payable to ACG over those of other entities such as IHI.

79.    On information and belief, ACG was well aware that LTE was in financial trouble and was likely to default on its lease and other payments to ACG in connection with ACG's MSN0580 airplane.  On information and belief, ACG was well aware of IHI's sublease of a replacement engine for the V10154 engine to LTE and that this enabled LTE to fly ACG's MSN0580 airplane.  Moreover, on information and belief, ACG was well aware that asking IHI to withhold the repaired V10154 engine from LTE would extend the actual term of the sublease for the V12580 engine at a time ACG had strong concerns about LTE's ability to pay leasing fees.

80.    ACG's violation of its covenant of good faith and fair dealing has resulted in damages of at least US$ 992,285 to IHI, as reflected in the sublease rentals for the replacement engine for the V10154 engine, and further sums for a replacement of the V10155 engine, and interest thereon.

**Counterclaim Count IV: Unjust Enrichment**

81.    Counterclaim-Plaintiff incorporates Paragraphs 29-80 above as if fully set forth herein.

82.    According to Paragraph 10 of the Complaint, ACG alleges that it was not a party to the sublease of the V12580 replacement engine to LTE for ACG's V10154 engine.

83.    Nonetheless, ACG has been enriched by virtue of the sublease, since it enabled LTE to operate and fly ACG's MSN0580 airplane and thereby generate revenue to pay ACG's leasing fees, when otherwise LTE could not, and ACG did not pay any leasing fees to IHI.  ACG has also been enriched by asking IHI in June 2008 and thereafter to withhold the repaired V10154 engine from LTE in order to pressure LTE into prioritizing its accounts payable to ACG over those of other entities such as IHI.  On information and belief, ACG was thereby able to collect outstanding payments from LTE and managed to terminate its airplane lease before LTE became insolvent.

84.    ACG has also been enriched by IHI's storage of the V10154 engine.  ACG has refused to pay the storage and packing fees for the V10154 engine even though IHI complied with ACG's request to hold on to the engine after July 15, 2008.

85.    ACG's enrichment has been at the expense of IHI.  IHI leased the V12580 replacement engine from IAE and subleased it to LTE to mitigate damages caused by ACG's breach of the Settlement Agreement, only to see LTE fail to pay IHI at least US$ 992,285 in fees for the sublease.  IHI also made the necessary arrangements and incurred costs for storing and packing the V10154 engine.

86.    It would be unjust to allow ACG to retain the benefits described above.  On information and belief, ACG was well aware of IHI's sublease of the V12580 replacement

engine for ACG's V10154 engine to LTE, and that this enabled LTE to fly ACG's MSN0580 airplane. On information and belief, ACG was also well aware that LTE was in financial trouble and was likely to default on its lease and other payments to ACG in connection with ACG's MSN0580 airplane. Moreover, on information and belief, ACG was well aware that asking IHI to withhold the repaired V10154 engine from LTE would extend the actual term of the sublease for the V12580 replacement engine at a time ACG had strong concerns about LTE's ability to pay leasing fees. On information and belief, ACG was also well aware that IHI had to store the V10154 engine pursuant to ACG's request.

87.     The circumstances were such that equity and good conscience require ACG to make restitution.

*                         *                         *

Defendant and Counterclaim-Plaintiff IHI hereby reserves the right to amend the foregoing defenses and responses based on facts and circumstances that may hereafter arise or come to light in this action.

WHEREFORE, defendant and counterclaim-plaintiff IHI prays that this Court enter judgment:

(a)     rejecting Plaintiff's claim for a declaration that it has no liability to Defendant for the US$ 992,285 or any other sum requested by Defendant;

(b)     declaring that Plaintiff has breached the Settlement Agreement and awarding Defendant: (1) damages arising in connection with the breach in an amount in excess of US$ 992,285 and interest thereon; (2) liquidated damages in the amount of US$ 150,000 and interest thereon; and (3) storage fees in the amount of at least US$ 250 per day since July 18, 2008 and other fees associated with the storage of the V10154 engine, and interest thereon.

(c)      declaring that Plaintiff has breached its implied covenant of good faith and fair

dealing and awarding Defendant damages arising in connection with the breach in an amount in

excess of US$ 992,285 and interest thereon;

(d)      declaring that Plaintiff has been unjustly enriched and granting Defendant

restitution for the unpaid leasing fees, the unpaid storage fees and other fees associated with the

storage of the V10154 engine, and the interest thereon;

(e)      awarding Defendant its costs, disbursements, and attorneys' fees incurred in this

action; and

(f)      granting Defendant such other and further relief as the Court may deem just and

proper.

Dated: New York, New York
      March 19, 2009


By:  /s/ James E. Hough
      James E. Hough (JH-1066)
      MORRISON & FOERSTER LLP
      1290 Avenue of the Americas
      New York, New York 10104-0050
      (212) 468-8000

      Robert H. Kreutzer (RK-1532)
      7955 E. Chaparral Rd. Unit 110
      Scottsdale, AZ 85250-7233
      (480) 367-9073

      Craig I. Celniker (CC-2352)
      Shogo Asaji (SA-8547)
      MORRISON & FOERSTER LLP
      Shin-Maru Building 29th Fl.
      1-5-1 Marunouchi, Chiyoda-ku
      Tokyo, Japan 100-6529
      (011-81-3) 3214-6522

      Attorneys for Defendant
      IHI Corporation